**CATHERINE E. GREIG**

**CONTENTS**

1. Appraisal
2. Certificate of Municipal Liens
3. Plot Plan
4. Escrow Agreement
5. Mortgage
6. Discharge of Mortgage

File No. 111181

## SUMMARY APPRAISAL REPORT

OF THE REAL PROPERTY LOCATED AT

16 Hillcrest Road
Quincy, MA 02171

for

Attorney Frederick W. Adami III
1825 Belmont Street
Brockton, MA 02301

as of

07/21/2011

by

Joseph M. Izzo
40 Gloria Drive
Bridgewater, MA 02324

Izzo Appraisal Services

Summary Appraisal Report

# Exterior-Only Inspection Residential Appraisal Report

File # 111181

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

Property Address 16 Hillcrest Road | City Quincy | State MA | Zip Code 02171
Borrower n/a | Owner of Public Record Catherine Greig | County Norfolk
Legal Description See attached deed
Assessor's Parcel # 6080N-30-22E Assessed Value $343,700 | Tax Year 2011 | R. E. Taxes $ 4,612
Neighborhood Name Squantum | Map Reference MSA 14484 | Census Tract 4174
Occupant [ ] Owner [X] Tenant [ ] Vacant | Special Assessments $ n/a | [ ] PUD | HOA $ n/a [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Market Value
Lender/Client Attorney Frederick W. Adami III | Address 1825 Belmont Street, Brockton, MA 02301
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of the appraisal? [ ] Yes [X] No
Report data source(s) used, offering price(s), and date(s). MLS/The Warren Group

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ | Date of Contract | Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Percent Land Use % | |
|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE $ (000) | AGE (yrs) | One-Unit | 100.0 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | 250 Low | 1 | 2-4 Unit | % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 1,000 High | 75 | Multi-Family | % |
| | | 350 Pred. | 40 | Commercial | % |
| | | | | Other | % |

Neighborhood Boundaries The subject is located in the Squantum section of Quincy.

Neighborhood Description The neighborhood consists predominately of single family homes which vary in size, style and condition. High end of values are along the water front. Support facilities and local commercial properties are located nearby and are market accepted in the is area. No adverse conditions noted.

Market Conditions (including support for the above conclusions) Market conditions appear to be stable in the area. Marketing time is generally within six months. General market research revealed the majority of transactions involve conventional financing. Loan discounts and sales concessions are occasionally occurring in the market at this time.

**SITE**

Dimensions See legal description. | Area 6,300 sf | Shape Mostly Rectangular | View Neighborhood
Specific Zoning Classification RESA | Zoning Description Residential allowed
Zoning Compliance [ ] Legal [X] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street Asphalt | X | |
| Gas | | X Unknown | Sanitary Sewer | X | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 25025C0084G | FEMA Map Date 2009-09-25
Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe
Site is generally level and typical in size for this area. The subject is a detached single family home. The site has paved driveway, fence and lawn area. No easements or encroachments noted.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner
[X] Other (describe) Exterior inspection from the street/Client | Data Source(s) for Gross Living Area Public Records

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | [ ] FWA [ ] HWBB | [ ] Fireplace(s) # | [ ] None |
| # of Stories 1 story | [X] Full Basement [X] Finished | [ ] Radiant | [ ] Woodstove(s) # | [X] Driveway # of Cars 3 |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | [ ] Partial Basement [ ] Finished | [X] Other Elect BB | [ ] Patio/Deck | Driveway Surface Paved |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls Wd shingles/Avg | Fuel Electric | [ ] Porch | [ ] Garage # of Cars |
| Design (Style) Split Level | Roof Surface Asphalt | [X] Central Air Conditioning | [ ] Pool | [ ] Carport # of Cars |
| Year Built 1950 | Gutters & Downspouts None | [ ] Individual | [X] Fence | [ ] Attached [ ] Detached |
| Effective Age (Yrs) estimated 20+ | Window Type Dbl Hung | [ ] Other | [ ] Other | [ ] Built-in |

Appliances [ ] Refrigerator [ ] Range/Oven [ ] Dishwasher [ ] Disposal [ ] Microwave [ ] Washer/Dryer [X] Other (describe) Unknown drive-by
Finished area above grade contains: 7 Rooms 4 Bedrooms 1.50 Bath(s) 1,296 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) None noted from a street inspection. Room count, bedrooms and bathroom information obtained from public records.
Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).
The exterior is in overall average condition. The shingles appear worn and need of scrapping and painting. The interior is assumed to be in average condition with average kitchen and baths and no major updating.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No
If Yes, describe There are no known or apparent environmental hazards in the subjects neighborhood.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe

Summary Appraisal Report

## Exterior-Only Inspection Residential Appraisal Report

File # 111181

There are 14 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 309,000 to $ 829,000.

There are 23 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 270,000 to $ 850,000.

SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 16 Hillcrest Road Quincy | 25 Standish Road Quincy | | 52 Essex Street Quincy | | 59 Aberdeen Road Quincy | |
| Proximity to Subject | | 0.54 miles N | | 0.29 miles NW | | 0.11 miles N | |
| Sale Price | $ | | $ 276,000 | | $ 358,000 | | $ 270,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 195.47 sq. ft. | | $ 247.92 sq. ft. | | $ 250.93 sq. ft. | |
| Data Source(s) | | MLS/Broker/DOM 54 | | MLS/Ext Inspec/DOM 37 | | MLS/Ext Inspec/DOM 22 | |
| Verification Source(s) | | Assessor/Public Records | | Assessor/Public Records | | Assessor/Public Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | Conventional None known | | Conventional None known | | Conventional None known | |
| Date of Sale/Time | | 07/22/2011 | | 06/02/2011 | | 07/19/2011 | |
| Location | Good | Avg/Good | 27,600 | Good | | Avg/Good | 27,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,300 sf | 4,827 | | 8,500 sf | | 6,386 sf | |
| View | Neighborhood | Neighborhood | | Neighborhood | | Neighborhood | |
| Design (Style) | Split Level | Cape | | Raised Ranch | | Ranch | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 61 Years | 66 Years | | 22 Years | | 61 Years | |
| Condition | Average | Average | | Average/Good | -17,900 | Average/Good | -13,500 |
| Above Grade Room Count (Total / Bdrms. / Baths) | 7 / 4 / 1.50 | 7 / 4 / 1.00 | | 7 / 3 / 2.50 | -7000 bth | 5 / 2 / 1.00 | +3500 bth |
| Gross Living Area | 1,296 sq. ft. | 1,412 sq. ft. | -3,480 | 1,444 sq. ft. | -4,440 | 1,076 sq. ft. | 6,600 |
| Basement & Finished Rooms Below Grade | Full Basement Part Fin | Full Basement Unfinished | 1,000 | Full Basement Part Fin | | Full Basement Unfinished | 1,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Elect BB/Central | Central/None | 3,000 | Central/Central | | Central/None | 3,000 |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | No Garage | 1 Car Det | -5,000 | No Garage | | No Garage | |
| Porch/Patio/Deck | Standard | Standard | | Standard | | Standard | |
| Amenities | Fireplace | Fireplace | | No Fireplace | 3,000 | Fireplace | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - | $ 23,120 | [ ] + [X] - | $ -26,340 | [X] + [ ] - | $ 27,600 |
| Adjusted Sale Price of Comparables | | Net Adj. 8.4 % Gross Adj. 14.5 % | $ 299,120 | Net Adj. 7.4 % Gross Adj. 9.0 % | $ 331,660 | Net Adj. 10.2 % Gross Adj. 20.2 % | $ 297,600 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) MLS, The Warren Group, Public Records

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s) MLS, The Warren Group, Public Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No prior sale | No prior sales w/in 1 year | No prior sales w/in 1 year | No prior sales w/in 1 year |
| Price of Prior Sale/Transfer | within 36 months | | | |
| Data Source(s) | Public Records | Public Records | Public Records | Public Records |
| Effective Date of Data Source(s) | 07/11 | 07/11 | 07/11 | 07/11 |

Analysis of prior sale or transfer history of the subject property and comparable sales The subject has not sold or been listed within the last 36 months. The comps have no other sale or listing within the past 12 months.

Summary of Sales Comparison Approach *** See Additional Comments ***

Indicated Value by Sales Comparison Approach $300,000

RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 300,000 Cost Approach (if developed) $ ND Income Approach (if developed) $ ND

The Sales Comparison Approach is given the most weight. The cost approach and income approach were not developed due to the drive by nature of this report.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: The appraisal is made as is.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $300,000 , as of July 21, 2011 , which is the date of inspection and the effective date of this appraisal.

**Additional Comparables**

**Exterior-Only Inspection Residential Appraisal Report** File # 111181

SUBJECT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower or Owner | n/a | | | | | | |
| Property Address | 16 Hillcrest Road | | | | | | |
| City | Quincy | County | Norfolk | State | MA | Zip Code | 02171 |
| Lender or Client | Attorney Frederick W. Adami III | | | | | | |

SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 16 Hillcrest Road Quincy | 9 Alfred Street Quincy | | | | | |
| Proximity to Subject | | 0.07 miles NW | | | | | |
| Sale Price | $ | | $ 390,000 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 291.48 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS/Ext Inspec/DOM 17 | | | | | |
| Verification Source(s) | | Assessor/Public Records | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | Conventional None known | | | | | |
| Date of Sale/Time | | 06/10/2011 | | | | | |
| Location | Good | Good | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 6,300 sf | 6,788 sf | | | | | |
| View | Neighborhood | Neighborhood | | | | | |
| Design (Style) | Split Level | Ranch | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 61 Years | 57 Years | | | | | |
| Condition | Average | Good | -39,000 | | | | |
| Above Grade Room Count (Total / Bdrms. / Baths) | 7 / 4 / 1.50 | 6 / 3 / 2.00 | -3500 bth | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Gross Living Area | 1,296 sq. ft. | 1,338 sq. ft. | -1,260 | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | Full Basement Part Fin | Full Basement Part Fin | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Elect BB/Central | Central/None | 3,000 | | | | |
| Energy Efficient Items | Typical | Typical | | | | | |
| Garage/Carport | No Garage | 1 Car Att | -7,500 | | | | |
| Porch/Patio/Deck | Standard | Standard | | | | | |
| Amenities | Fireplace | No Fireplace | 3,000 | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -45,260 | [ ] + [ ] - | $ | [ ] + [ ] - | $ |
| Adjusted Sale Price of Comparables | | Net Adj. 11.6 % Gross Adj. 14.7 % | $ 344,740 | Net Adj. % Gross Adj. % | $ | Net Adj. % Gross Adj. % | $ |

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No prior sale | No prior sales w/in 1 year | | |
| Price of Prior Sale/Transfer | within 36 months | | | |
| Data Source(s) | Public Records | Public Records | | |
| Effective Date of Data Source(s) | 07/11 | 07/11 | | |

Summary of Sales Comparison Approach

Summary Appraisal Report

**Exterior-Only Inspection Residential Appraisal Report** File # 111181

ADDITIONAL COMMENTS

EXPANDED SCOPE OF WORK:

1. DEFINITION OF INSPECTION:The term "Inspection", as used in this report, is for valuation purposes only, it is not the same level of inspection that is required for a "Professional Home Inspection". Per the clients request only an exterior inspection was completed from the street only. The appraisal is based on information gathered from public records, viewing the subject property, neighborhood and comparable properties. When conflicting information has been discovered, the sources deemed most reliable have been used. Pictures of comparable sales maybe taken from previous appraisal files or from the MLS listing at the discretion of the appraiser in order to accurately portray the property with regard to its sale price.

2 The Intended User of this appraisal report is the client. The Intended Use is to evaluate the the property that is the subject of this appraisal to assist the client in estimating fair market value, subject to the stated,scope of work, purpose of the appraisal, reporting requirements of this appraisal report form and definition of market value. No additional Intender Users are identified by the appraiser.

HVCC: No employee, director, officer or agent of the client, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the client has influenced or attempted to influence the development, reporting, result, or review of this assignment thorough coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner. I have not been contacted by anyone other than the intended user, lender/client as identified on the first page of this report.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) The cost approach was not developed due to the drive by nature of this report.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ..................... | =$ 0 |
|---|---|---|
| Source of cost data | Dwelling 1,296 Sq. Ft. @ $ | =$ 0 |
| Quality rating from cost service / Effective date of cost data | BSMT Full Basement Sq. Ft. @ $ | =$ 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | |
| The cost approach was not developed due to the drive by nature of this report. | Garage/Carport Sq. Ft. @ $ | =$ |
| | Total Estimate of Cost-New | =$ 0 |
| | Less Physical / Functional / External Depreciation | =$( 0) |
| | Depreciated Cost of Improvements | =$ 0 |
| | "As-is" Value of Site Improvements | =$ |
| Estimated Remaining Economic Life (HUD and VA only) 60 Years | Indicated Value By Cost Approach | =$ ND |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ X Gross Rent Multiplier = $ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases | Total number of units | Total number of units sold

Total number of units rented | Total number of units for sale | Data Source(s)

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion

Does the project contain any multi-dwelling units? ☐ Yes ☐ No Data Source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities

File No. 111181

## ADDITIONAL COMMENTS

Borrower or Owner n/a
Property Address 16 Hillcrest Road
City Quincy County Norfolk State MA Zip Code 02171
Lender or Client Attorney Frederick W. Adami III

### LEGAL DESCRIPTION
See deed attached.

### DATA ON OFFERS FOR SALE OF THE SUBJECT PROPERTY
The subject property has not been offered for sale in MLS over the past three years.

### MARKET CONDITIONS
Market conditions in this area appear to be stable. There are a limited supply of short sales and foreclosures in the area that do have a negative impact on values. This was considered in the final estimate of value.

### ZONING DESCRIPTION
The subject property is considered legal non-conforming.

### LEGAL DESCRIPTION
HIGHEST AND BEST USE: For the purpose of this appraisal and the nature of the report it is assumed the highest and best use is it current use as a three family dwelling.

### UTILITIES AND OFF-SITE IMPROVEMENTS
It is assumed that the utilities are in overall average condition and in working order. The subject is located on a paved roadway, with over head lighting and sidewalks.

### ADVERSE SITE CONDITIONS
No noted

### ADDITIONAL FEATURES
None

### CONDITION OF THE IMPROVEMENTS
Based on an exterior inspection it is assumed that the subject property is in overall average condition.

### CONFORMANCE OF PROPERTY
The subject's style and design are typical for this area and market accepted.

### DATA SOURCES FOR PRIOR SALES OF SUBJECT
Banker & Tradesman, MLS and tax records.

### DATA SOURCES FOR PRIOR SALES OF COMPARABLES
Banker & Tradesman, MLS and tax records

### SALES COMPARISON
$30.00 per sf was used for the GLA adjustment. Additional rooms and bedrooms adjusted thru GLA. Room and bedroom counts for the subject property were obtained from public records. Room and bedroom counts for the comparable's were obtained from MLS and public records. Sales 1 & 3 are located in inferior residential locations with more traffic, which is less desirable in the marketplace. Sales 2, 3 & 4 are adjusted for superior overall condition based on MLS data and exterior inspection. Due to the lack of similar style homes, different style homes were used which offered similar utility. All sales indicate a reasonable value range for the subject property and are located in the Squantum area of Quincy. Sales 1 & 3 are the most recent sales and given the most weight. Final value rounded.

### CONDITIONS OF THE APPRAISAL
The appraisal is made as is.

### ADDITIONAL COMMENTS
Please note that 10 Hillcrest Road sold as a foreclosure on 06/28/2011 for $286,000. The home is a conventional style home built in 1955 with 1,702 sf of living area.

Summary Appraisal Report

**Exterior-Only Inspection Residential Appraisal Report** File # 111181

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Summary Appraisal Report

**Exterior-Only Inspection Residential Appraisal Report** File # 111181

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

**Summary Appraisal Report**

## Exterior-Only Inspection Residential Appraisal Report

File # 111181

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

### APPRAISER

Signature Joseph M. Izzo
Name Joseph M. Izzo
Company Name Izzo Appraisal Services
Company Address 40 Gloria Drive
Bridgewater, MA 02324
Telephone Number 508-279-1600
Email Address izzoappraisals@aol.com
Date of Signature and Report July 27, 2011
Effective Date of Appraisal July 21, 2011
State Certification # MA C.G.R.E. Appraiser#5205
or State License #
or Other (describe) State #
State MA
Expiration Date of Certification or License 05/24/2012

ADDRESS OF PROPERTY APPRAISED
16 Hillcrest Road
Quincy, MA 02171

APPRAISED VALUE OF SUBJECT PROPERTY $ 300,000

LENDER/CLIENT
Name
Company Name Attorney Frederick W. Adami III
Company Address 1825 Belmont Street
Brockton, MA 02301
Email Address

### SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature
Name
Company Name
Company Address
Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
- [ ] Did not inspect exterior of subject property
- [ ] Did inspect exterior of subject property from street

Date of Inspection

COMPARABLE SALES
- [ ] Did not inspect exterior of comparable sales from street
- [ ] Did inspect exterior of comparable sales from street

Date of Inspection

File No. 111181

## DISCLOSURE ADDENDUM

Borrower or Owner n/a
Property Address 16 Hillcrest Road
City Quincy County Norfolk State MA Zip Code 02171
Lender or Client Attorney Frederick W. Adami III

DEFINITION OF INSPECTION:

The term "Inspection", as used in this report, is not the same level of inspection that is required for a "Professional Home Inspection". The appraiser does not fully inspect the electrical system, plumbing system, mechanical systems, foundation system, floor structure, or subfloor. The appraiser is not an expert in construction materials and the purpose of the appraisal is to make an economic evaluation of the subject property. If the client needs a more detailed inspection of the property, a home inspection, by a Professional Home Inspector, is suggested.

DIGITAL SIGNATURES:

The signature(s) affixed to this report, and certification, were applied by the original appraiser(s) or supervisory appraiser and represent their acknowledgements of the facts, opinions and conclusions found in the report. Each appraiser(s) applied his or her signature electronically using a password encrypted method. Hence these signatures have more safeguards and carry the same validity as the individual's hand applied signature. If the report has a hand-applied signature, this comment does not apply.

APPRAISER:
Signature: Joseph M. Izzo
Name: Joseph M Izzo
Date Signed: July 27, 2011
State Certification #: MA C.G.R.E. Appraiser#5205
or State License #:
State: MA
Expiration Date of Certification or License: 05/24/2012

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature:
Name:
Date Signed:
State Certification #: 5205
or State License #:
State:
Expiration Date of Certification or License:
☐ Did ☐ Did Not Inspect Property

File No. 111181

**Location Map**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower or Owner | n/a | | | | | | |
| Property Address | 16 Hillcrest Road | | | | | | |
| City | Quincy | County | Norfolk | State | MA | Zip Code | 02171 |
| Client | Attorney Frederick W. Adami III | | | | | | |

Comp 1
25 Standish Road
Quincy, MA 02171
0.54 miles N
$278,000
Comp 2
52 Essex Street
Quincy, MA 02171
0.29 miles NW
$356,000
Comp 4
8 Alfred Street
Quincy, MA 02171
0.07 miles NW
$390,000
Subject
16 Hillcrest Road
Quincy, MA 02171
Comp 3
59 Aberdeen Road
Quincy, MA 02171
0.11 miles N
$270,000
Squantu
Dundee Rd
Aberdeen Rd
Quincy Shore Dr
2500 Feet
© 2011 Microsoft Corporation © 2010 NAVTEQ © AND

Izzo Appraisal Services

File No.   111181



## PHOTOGRAPH ADDENDUM

Borrower or Owner   n/a
Property Address   16 Hillcrest Road
City   Quincy          County   Norfolk          State   MA          Zip Code   02171
Client   Attorney Frederick W. Adami III



FRONT VIEW OF
SUBJECT PROPERTY



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE OF
SUBJECT PROPERTY

File No. 111181

# PHOTOGRAPH ADDENDUM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower or Owner | n/a | | | | | | |
| Property Address | 16 Hillcrest Road | | | | | | |
| City | Quincy | County | Norfolk | State | MA | Zip Code | 02171 |
| Client | Attorney Frederick W. Adami III | | | | | | |

**COMPARABLE #1**

25 Standish Road
Quincy

| | |
|---|---|
| Price | $276,000 |
| Price/SF | 195.47 |
| Date | 07/22/2011 |
| Age | 66 Years |
| Room Count | 7-4-1.00 |
| Living Area | 1,412 |
| Value Indication | $299,120 |

**COMPARABLE #2**

52 Essex Street
Quincy

| | |
|---|---|
| Price | $358,000 |
| Price/SF | 247.92 |
| Date | 06/02/2011 |
| Age | 22 Years |
| Room Count | 7-3-2.50 |
| Living Area | 1,444 |
| Value Indication | $331,660 |

**COMPARABLE #3**

59 Aberdeen Road
Quincy

| | |
|---|---|
| Price | $270,000 |
| Price/SF | 250.93 |
| Date | 07/19/2011 |
| Age | 61 Years |
| Room Count | 5-2-1.00 |
| Living Area | 1,076 |
| Value Indication | $297,600 |

File No. 111181

## PHOTOGRAPH ADDENDUM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower or Owner | n/a | | | | | | |
| Property Address | 16 Hillcrest Road | | | | | | |
| City | Quincy | County | Norfolk | State | MA | Zip Code | 02171 |
| Client | Attorney Frederick W. Adami III | | | | | | |

### COMPARABLE #4

9 Alfred Street
Quincy

| | |
|---|---|
| Price | $390,000 |
| Price/SF | 291.48 |
| Date | 06/10/2011 |
| Age | 57 Years |
| Room Count | 6-3-2.00 |
| Living Area | 1,338 |
| **Value Indication** | $344,740 |

### COMPARABLE #5

| | |
|---|---|
| Price | $ |
| Price/SF | |
| Date | |
| Age | |
| Room Count | -- |
| Living Area | |
| **Value Indication** | $ |

### COMPARABLE #6

| | |
|---|---|
| Price | $ |
| Price/SF | |
| Date | |
| Age | |
| Room Count | -- |
| Living Area | |
| **Value Indication** | $ |

JUL.19.2011 10:34 #0058 P.002 /003

MASSACHUSETTS QUITCLAIM DEED SHORT FORM (INDIVIDUAL) 881

William J. Doran

of Quincy Norfolk County, Massachusetts,

being unmarried, for consideration paid, and in full consideration of One Hundred Sixty Thousand and 00/100 ($160,000.00) Dollars

grant to Catherine A. Garvig

of 15 Hillcrest Road, Quincy, Massachusetts with quitclaim covenants

the land in Quincy in the County of Norfolk and said Commonwealth, bounded and described as follows:

Southerly by Hillcrest Road, shown on the plan hereinafter referred to, sixty (60) feet;

Westerly by lot numbered 22D, Block 17, shown on said plan, one hundred five (105) feet;

Northerly by lot numbered 22B, Block 17, shown on said plan, sixty (60) feet; and

Easterly by lot numbered 22F, Block 17, shown on said plan, one hundred five (105) feet.

Said parcel is shown as lot numbered 22E, Block 17, on a plan drawn by Ernest W. Branch, Inc., C. Engrs., dated April 17, 1945, as approved by the Land Court, filed in the Land Registration Office as No. 1963-27, a copy of a portion of which is filed in Norfolk Registry District with Certificate No. 32390, Book 152.

22E

32390 162

For my title see Norfolk County Registry of Deeds Certificate of Title No. 117380.

Witness my hand and seal this 11th day of September 19 86.

William J. Doran

The Commonwealth of Massachusetts

NORFOLK ss September 11, 19 86

Then personally appeared the above named William J. Doran

and acknowledged the foregoing instrument to be his free act and deed before me

Notary Public — Justice of the Peace

My commission expires

CARL J. ANDERSON, Notary Public
My Commission Expires April 23, 1993

[illegible] — Joint Tenants — Tenants in Common.)

[illegible] AS AMENDED BY CHAPTER 497 OF 1969

[illegible] upon it the full name, residence and post office address of the grantee [illegible] in dollars or the nature of the other consideration therefor, if not delivered [illegible] mean the total price for the conveyance without deduction for any liens or [illegible] All such endorsements and recitals shall be recorded as part of the deed. [illegible] of any deed. No register of deeds shall accept a deed for recording unless [illegible]

File No. 111181

| | |
|---|---|
| Borrower or Owner | n/a |
| Property Address | 16 Hillcrest Road |
| City | Quincy |
| County | Norfolk |
| State | MA |
| Zip Code | 02171 |
| Client | Attorney Frederick W. Adami III |

COMMONWEALTH OF MASSACHUSETTS

DIVISION OF PROFESSIONAL LICENSURE

OF REAL ESTATE APPRAISERS

CERT GEN. REAL ESTATE APPRAISER

ISSUES THIS LICENSE TO

JOSEPH M IZZO

40 GLORIA DR

BRIDGEWATER MA 02324-2100

| 5205 | 10/07/11 | 555856 |
|---|---|---|
| LICENSE NO. | EXPIRATION DATE | SERIAL NO. |

# Qualifications of Joseph M. Izzo

**Education:**

**Boston College, Newton, Massachusetts**
Bachelor of Science in Marketing 1979

**Employment:**

**Izzo Appraisal Services**
Senior Appraiser/Review Appraiser. Real estate appraising of residential and commercial properties
(1999 through present)

**North Atlantic Appraisal and Consulting Co.**
Real estate appraising of residential and commercial properties
(1992-1998)

**Joseph M. Izzo Realty**
Real estate sales of residential and commercial properties
(1980 through 1992)

**Licenses and Certifications:**

Massachusetts Certified General Real Estate Appraiser License No. 5205
FHA Approved Appraiser MA

**Courses & Seminars:**

**Residential Appraisal Education**

REO Appraisal: Appraisal of Residential Property for Foreclosure and Pre-foreclosure
FHA and the Appraisal Process
Standards of Professional Appraisal Practice & Conduct 2011 Update
Standards of Professional Appraisal Practice & Conduct
Real Estate Appraisal Principles I
Real Estate Appraisal IA
Introduction to Income Property Appraisal
Professional Guide to the New URAR form

**Commercial Appraisal Education**

Appraising from Blueprints and Specifications
Apartment Appraisal, Concept and Applications
Advance Income Properties
Appraisal of Local Retail Properties
Analyzing Operating Expenses
Advance Virtual Real Estate Appraising
Small Hotel/Motel Valuations
Land Planning and Development for Appraisers
Advanced Income Property Appraising

**Professional Associations**
Massachusetts Board of Real Estate Appraisers (State Certified General)
Appraisal Institute-Associate Member



State Tax Form 290
Ce- -ificate: 24344
Is ance Date: 07/20/2011

MUNICIPAL LIEN CERTIFICATE
CITY of QUINCY, MA
COMMONWEALTH OF MASSACHUSETTS

Requested by REED,ADAMI & KAISER, P.C.

I certify from available information that all taxes, assessments and charges now payable that constitute liens as of the date of this certificate on the parcel of real estate specified in your application received on 07/20/2011 are listed below.

DESCRIPTION OF PROPERTY

Parcel ID: 021071 16 HILLCREST ROAD

GAEIG CATHERINE E
889 E 4TH STREET
SO BOSTON MA 02127

| | | |
|---|---|---|
| Land area | : | 6,300 SF |
| Land Value | : | 206,300 |
| Impr Value | : | 137,400 |
| Land Use | : | 0 |
| Exemptions | : | 0 |
| Taxable Value | : | 343,700 |

Deed date: 09/11/1986 Book/Page: 00623/0113
Class: 1010-RESIDNTL

| FISCAL YEAR | 2012 | 2011 | 2010 |
|---|---|---|---|
| DE RIPTION | | | |
| COMMUNITY PRESERVATION | $16.35 | $32.70 | $36.41 |
| REAL ESTATE RESIDENTIAL | $2,306.23 | $4,612.45 | $4,962.79 |
| TOTAL BILLED: | $2,322.58 | $4,645.15 | $4,999.20 |
| Charges/Fees | $.00 | $.00 | $.00 |
| Abatements/Exemptions | $.00 | $.00 | $.00 |
| Payments/Credits | -$1,161.30 | -$4,645.15 | -$4,999.20 |
| Interest to 07/20/2011 | $.00 | $.00 | $.00 |
| TOTAL BALANCE DUE: | $1,161.28 | $.00 | $.00 |

NOTE: Actual 2012 taxes not yet issued.

Deborah C. Coughlin
TREASURER

DEBORAH C. COUGHLIN
TAX COLLECTOR/TREASURER

THIS FORM APPROVED BY THE COMMISSIONER OF REVENUE





SHED
LOT 22E
LC PLAN #1963-27
LOT 22D
105'
1 STORY
DWELLING
105'
LOT 22F
No. 16
60'

HILLCREST ROAD

COMMONWEALTH OF MASSACHUSETTS
JOHN S.
LAURETANI
# 34311
PROFESSIONAL
LAND SURVEYOR

THERE WERE NO LOT CORNERS FOUND. RECOMMENDATION IS TO PERFORM AN INSTRUMENT SURVEY TO VERIFY LOCATION AS SHOWN.

**MORTGAGE LENDER USE ONLY**

**plotplans.com**

DESLAURIERS
& ASSOCIATES, INC.

101 CONSTITUTION BLVD, SUITE D
FRANKLIN, MA 02038
(800)287-8800 FAX.:(508)528-4011

## MORTGAGE INSPECTION PLAN

ADDRESS: 16 HILLCREST ROAD, QUINCY, MA
LENDER:
ATTORNEY: FREDERICK W. ADAMI, III
OWNER: CATHERINE E. GREIG
APPLICANT: SAME
DATE: 7/20/2011 SCALE: 1"=20' COUNTY: NORFOLK

UNREGISTERED LAND
DEED BOOK: PAGE:
PLAN BOOK: PAGE: LOT(S):
PLAN NUMBER: OF

REGISTERED LAND CERTIFICATE OF TITLE: 124513
REGISTRATION BOOK: 623 PAGE: 113

THERE ARE NO DEEDED EASEMENTS IN THE ABOVE REFERENCED DEED OR ENCROACHMENTS WITH RESPECT TO EXCEPT AS STATED ON THE DEED OF RECORD SHOWN.

THE LOCATION OF THE DWELLING AS SHOWN HEREON EITHER WAS IN COMPLIANCE WITH THE LOCAL ZONING BY-LAWS IN EFFECT WHEN CONSTRUCTED (WITH RESPECT TO STRUCTURAL SETBACK REQUIREMENTS ONLY), OR IS EXEMPT FROM VIOLATION ENFORCEMENT ACTION UNDER MASS. G.L.

ASSESSORS MAP:

FLOOD HAZARD INFO:.
ZONE: X DATED: 5/16/2006
COMMUNITY PANEL: 255219 0017D

THE LOCATION OF THE DWELLING SHOWN DOES NOT FALL WITHIN A SPECIAL



***Escrow Agreement***

**Escrow Agreement** entered into this ________ day of _________, 2011, among Catherine E. Greig (herein "Surety"), Carmen M. Ortiz, in her official capacity as United States Attorney for the District of Massachusetts (herein "United States Attorney) and Sarah A. Thornton, in her official capacity as Clerk of the United States District Court for the District of Massachusetts (herein "Escrow Agent").

**Whereas** the Surety is desirous of effecting the release of Catherine E. Greig, (herein "Defendant") in Criminal No. 97-217-JLA, on the terms and conditions of bail set forth in an Order Setting Conditions of Release (herein "Bail Order") dated ___________ and entered by the Honorable ______________________________, United States District Judge/Magistrate Judge and has agreed to execute a personal bond in the amount of $___________ Dollars (herein "Personal Bond") to secure the Defendant's compliance with the terms and conditions of the Bail Order.

**Now Therefore**, in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1. The Surety shall execute a quitclaim deed to the parcel of real property located at 16 Hillcrest Road, Quincy, Norfolk County, Massachusetts in favor of the United States of America, and deliver said deed to the Escrow Agent to be held in escrow pursuant to the terms of this Agreement.

2. The Surety further agrees to execute any additional documents and take any action necessary to effectuate the transfer of said parcel of real property and facilitate the sale of such property in the event that the Defendant is in default of the terms and conditions of the Bail Order or Personal Bond.

3. The Escrow Agent shall hold the quitclaim deed in escrow under the following terms and conditions:

A. In the event that the Defendant fails to appear as required at all proceedings in Criminal No. 97-217-JLA or otherwise violates any condition of bail and Defendant is declared to be in default by a judicial officer of the United States District Court for the District of Massachusetts, then, upon order of the Court, and in lieu of or in addition to foreclosure proceedings on any mortgage granted by the Surety, the Escrow Agent shall tender the quitclaim deed to the United States Attorney and he shall cause the same to be immediately recorded without notice to the Surety. Any requirement that foreclosure proceedings be commenced upon any mortgage granted by the Surety in connection with Criminal No. 97-217-JLA is expressly waived by the Surety.

B. This Agreement shall terminate upon the final disposition of Criminal No. 97-217-JLA and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to the Surety.

4. The validity and construction of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

5. This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

**In Witness Whereof**, the parties have hereunto caused this Agreement to be executed as of the date first written above.

**ESCROW AGENT:**

SARAH A. THORNTON, CLERK

by:______________________
Deputy Clerk

CARMEN M. ORTIZ,
UNITED STATES ATTORNEY

by:______________________
Asst. U. S. Attorney

**SURETY:**

______________________
Catherine E. Greig

**The Commonwealth of Massachusetts**

On this ______ **day of** __________, **2011**, before me, the undersigned notary public, personally appeared Catherine E. Greig who proved to me through satisfactory evidence of identification, being (check whichever applies): [ ] Driver's license or other state or federal government document bearing a photographic image; [ ] Oath or affirmation of a credible witness known to me who knows the above signatory; or [ ] My own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by her voluntarily for its stated purpose.

______________________



***MORTGAGE***

**This Mortgage** is made this ______ day of ___________, 2011, between Catherine E. Greig, having a mailing address of 889 East Fourth Street, Boston, Massachusetts 02177 (herein "Mortgagor") and the **Clerk of the United States District Court for the District of Massachusetts**, John Joseph Moakley U. S. Courthouse, 1 Courthouse Way, Boston, Massachusetts (herein "Mortgagee").

**Witnesseth**, for consideration paid and to secure a personal bond of even date for Catherine E. Greig (herein "Defendant"), in Criminal Case No. 97-217-JLA, before the United States District Court for the District of Massachusetts (herein "Court"), in the amount of ____________________ ($___________) Dollars executed by the Defendant and the Mortgagor in favor of the United States of America and to secure due observance and performance of the obligation, terms and conditions as set forth in an Order Setting Conditions of Release dated ____________ and filed with the Court, and to further secure the performance of all other covenants and agreements of or by the Defendant and Mortgagor herein for the benefit of the Mortgagee, which may now exist or may hereafter exist or accrue while this Mortgage is still undischarged of record, and in furtherance of and pursuant to an Escrow Agreement made this day between the Mortgagor, the United States Attorney for the District of Massachusetts and the Mortgagee, the Mortgagor hereby mortgages, with power of sale, the following parcel of real property, with the following covenants thereon, situate, lying and being in the County of Suffolk, Commonwealth of Massachusetts, more particularly described in the following deed:

A deed from William J. Doran to Catherine E. Greig, Individually, dated September 11, 1986 and filed with Norfolk County Registry District of the Land Court, said deed being noted on Certificate of Title No. 124513 (see description of property attached hereto as "A" and incorporated herein);

**Together with** all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, water stock and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and, all of the foregoing, together with said property are hereinafter referred to as the "Property".

**The Mortgagor** covenants with the Mortgagee as follows:

1.    That the Mortgagor shall pay the indebtedness as hereinbefore provided.

2.    That the Mortgagor will keep the Property insured against loss by fire or hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagor will assign and deliver the policies to the Mortgagee; and, that the Mortgagor will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagor's default in so insuring the Property or in so assigning and delivering the policies.  However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3.    That the Mortgagor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4.    That the Mortgagor will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same.  In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagor.

5.    That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either: (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagor; or (B) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6.    That notice and demand or request may be made in writing and may be served in person or by mail.

7.    That the Mortgagor will warrant and defend the title to the Property against all claims and demands.

8.    That the Mortgagor will create no further encumbrances of any kind against the Property.

9.    That the Mortgagor, in case a sale shall be made under the power of sale, will upon request, execute, acknowledge and deliver to the purchaser or purchasers, a deed or deeds of release confirming such sale and that the Mortgagee is appointed and constituted

the attorney irrevocable of the Mortgagor to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10. That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11. Notwithstanding any other agreement between the Mortgagor and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon Order of the Court. It shall be the obligation of the Mortgagor to furnish the Mortgagee with a certified copy of said Order.

***In Witness Whereof,*** this Mortgage has been duly executed by the Mortgagor.

_________________________________
Catherine E. Greig

**The Commonwealth of Massachusetts**

On this ______ **day of ____________, 2011**, before me, the undersigned notary public, personally appeared Catherine E. Greig who proved to me through satisfactory evidence of identification, being (check whichever applies): [ ] Driver's license or other state or federal government document bearing a photographic image; [ ] Oath or affirmation of a credible witness known to me who knows the above signatory; or [ ] My own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by her voluntarily for its stated purpose.

_________________________________

"A"

**Description of Property**

The land in Quincy, in the County of Norfolk, said Commonwealth, bounded and described as follows:

**Southerly** by Hillcrest Road, shown on the plan hereinafter referred to, sixty (60) feet;

**Westerly** by lot numbered 22D, Block 17, shown on said plan, one hundred five (105) feet;

**Northerly** by lot numbered 22B, Block 17, shown on said plan, sixty (60) feet; and

**Easterly** by lot numbered 22F, Block 17, shown on said plan, one hundred five (105) feet.

Said parcel is shown as lot numbered 22E, Block 17, on a plan drawn by Ernest W. Branch, Inc., C. Engrs., dated April 17, 1945, as approved by the Land Court, filed in the Land Registration Office as No. 1963-27, a copy of a portion of which is filed in Norfolk County Registry District of the Land Court, Certificate of Title No. 32390, Book 162.



***Locus***: 16 Hillcrest Road
Quincy, MA

***DISCHARGE OF MORTGAGE***

**U. S. District Court for the District of Massachusetts**, holder of a mortgage from Catherine E. Greig, said mortgage being dated ____________________, filed with Norfolk County Registry District of the Land Court, as noted on Certificate of Title No. 124513, acknowledges satisfaction of same.

**Executed** as a sealed instrument this _________ day of ____________, _______.

**U. S. District Court for the District of Massachusetts**

by:__________________________________________

**The Commonwealth of Massachusetts**

On this ______ day of _________, 2011, before me, the undersigned notary public, personally appeared __________________________ on behalf of the U. S. District Court for the District of Massachusetts who proved to me through satisfactory evidence of identification, being (check whichever applies): [ ] Driver's license or other state or federal government document bearing a photographic image; [ ] Oath or affirmation of a credible witness known to me who knows the above signatory; or [ ] My own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by him/her voluntarily for its stated purpose.

____________________________________