FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2012 MAR 12  P 4: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 11-cr-10286-DPW |
| CATHERINE E. GREIG, | Violations: |
| a/k/a Carol Gasko, | |
| a/k/a Carol Gasco, | 18 U.S.C. § 371 |
| a/k/a Helen Marshall, | (Conspiracy to Harbor Fugitive) |
| a/k/a Carol Shapeton, | |
| a/k/a Mrs. Thomas Baxter, | 18 U.S.C. § 1028(f) |
| a/k/a J.L., | (Conspiracy to Commit Identity Fraud) |
| a/k/a P.M., | |
| a/k/a N.S., | 18 U.S.C. § 1028(a)(7) |
| a/k/a J.W., | (Identity Fraud) |
| a/k/a C.L., | |
| a/k/a M.R., | 18 U.S.C. §§ 982(a)(2)(B) and 1028(b)(5) |
| Defendant. | (Criminal Forfeiture) |

## SUPERSEDING INFORMATION

The United States Attorney charges that:

### Background

1.      At all times material to this Superseding Information, Defendant CATHERINE E. GREIG, a/k/a Carol Gasko, a/k/a Carol Gasco, a/k/a Helen Marshall, a/k/a Carol Shapeton, a/k/a Mrs. Thomas Baxter, a/k/a J.L., a/k/a P.M.,  a/k/a N.S., a/k/a J.W., a/k/a C.L., a/k/a M.R. ("GREIG") had a close, personal relationship with James J. Bulger ("Bulger").  In or about late 1994, GREIG and Bulger both lived in the Boston, Massachusetts, area.

2.      On or about December 23, 1994, Bulger fled Massachusetts in anticipation of being indicted by a federal grand jury sitting in Boston.

3. On or about January 4, 1995, Bulger and a criminal associate, Stephen J. Flemmi ("Flemmi"), were charged by federal criminal complaint with a felony, namely extortion in violation of 18 U.S.C. § 1951, and, that same day, federal arrest warrants issued for Bulger and Flemmi. Flemmi was arrested the next day, but law enforcement efforts to locate and arrest Bulger were unsuccessful.

4. On or about January 5, 1995, a criminal associate of Bulger's ("John Doe No. 1"), after learning that Flemmi had been arrested, spoke with GREIG about Flemmi's arrest and told her in substance that he believed that law enforcement was also looking to arrest Bulger.

5. On or about January 5, 1995, after Flemmi was arrested, John Doe No. 1 spoke with Bulger by telephone. After this call, Bulger continued his flight to avoid apprehension on the federal warrant.

6. On or about January 6, 1995, members of law enforcement searching for Bulger spoke with GREIG at her home in Quincy, Massachusetts. Law enforcement officers informed GREIG that they were looking for Bulger and asked permission to enter GREIG's house to look for him. GREIG denied their request.

7. On January 10, 1995, a federal grand jury sitting in Boston, Massachusetts, returned a multi-count superseding felony indictment (Criminal No. 94-10287-MLW) against Bulger and several co-defendants charging Bulger with, among other things, extortion and violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962(c) and (d). On that same day, a warrant issued for Bulger's arrest on that superseding indictment.

8.  On September 27, 2000, a federal grand jury in Boston, Massachusetts, returned a multi-count superseding felony indictment (Criminal No. 99-10371-RGS) against Bulger charging him with, among other things, violations of the RICO statute alleging as predicate acts murders of nineteen (19) individuals. On October 25, 2000, a warrant issued for Bulger's arrest on that superseding indictment.

9.  From January 5, 1995, through June 22, 2011, the charges against Bulger and the fact that law enforcement was seeking to arrest him were heavily publicized in Boston and, eventually, throughout the United States. Among other efforts to publicize the fact that Bulger was wanted on outstanding warrants, the FBI placed Bulger on its list of the Ten Most Wanted Fugitives and offered a reward for information leading to his capture.

## COUNT ONE
### (Conspiracy to Harbor Fugitive - 18 U.S.C. § 371)

10.     The United States Attorney hereby re-alleges paragraphs 1-9 of this Superseding Information and incorporates them by reference as if fully set forth herein.

11.     Beginning in or around January 1995 and continuing until on or about June 22, 2011, the exact dates being unknown to the United States Attorney, in the District of Massachusetts and elsewhere, the defendant,

<div style="text-align:center">

CATHERINE E. GREIG,
a/k/a Carol Gasko,
a/k/a Carol Gasco,
a/k/a Helen Marshall,
a/k/a Carol Shapeton,
a/k/a Mrs. Thomas Baxter,
a/k/a J.L.,
a/k/a P.M.,
a/k/a N.S.,
a/k/a J.W.,
a/k/a C.L.,
a/k/a M.R.,

</div>

willfully and knowingly conspired and agreed with Bulger and others known and unknown to the United States Attorney to commit an offense against the United States, namely, harboring and concealing Bulger, a person for whose arrest a felony warrant and process had been issued under the provisions of a law of the United States so as to prevent his discovery and arrest, after notice and knowledge of the fact that a warrant and process had been issued for the apprehension of Bulger, in violation of 18 U.S.C. § 1071.

### Purpose and Objective of the Conspiracy

12. The purpose and objective of the conspiracy was to enable Bulger to avoid apprehension on warrants for his arrest, including at least one warrant that had been issued by the United States District Court for the District of Massachusetts in January 1995.

### Manner and Means

13. It was part of the conspiracy that GREIG, Bulger, and other co-conspirators known and unknown to the United States Attorney pursued the purpose and objective of the conspiracy in the manner and means described below in paragraphs 14 to 21 of this Superseding Information.

14. GREIG and Bulger would and did falsely pose as a married couple under different false identities, and claimed to be from states other than Massachusetts.

15. GREIG and Bulger, with the assistance of others known and unknown to the United States Attorney, would and did obtain multiple means of identification, including social security numbers, driver's licenses, and state identification cards of other persons in order to conceal GREIG's and Bulger's true identities from others.

16. GREIG and Bulger would and did use multiple false identities in order to conceal their true identities from others.

17. GREIG and Bulger, while living together, would and did purchase goods and services, including necessities such as rent and drug prescriptions, using cash and money orders so as to conceal their true identities and the source of the funds.

18. GREIG and Bulger would and did continue to communicate with other persons in Massachusetts using methods of communication that masked their true identities and locations.

19. GREIG would and did obtain prescription medication for Bulger and herself using false identities both for Bulger and herself.

20. GREIG would and did pay bills for Bulger, including rent and utility bills under an assumed name.

21. GREIG would and did shop for groceries, clothing, and other household items for Bulger while they were living together under false identities.

### Overt Acts

22. In furtherance of the conspiracy, and to effect the purpose and objective of the conspiracy, GREIG, Bulger, and other co-conspirators known and unknown to the United States Attorney committed the following overt acts in the District of Massachusetts and elsewhere:

   a. In or about February 1995, the exact date being unknown to the United States Attorney, GREIG met John Doe No. 1 at Thomas Park in South Boston, Massachusetts, accompanied John Doe No. 1 on an hour long drive in and around Boston to defeat possible law enforcement surveillance of John Doe No. 1, and then met Bulger with John Doe No. 1 at Malibu Beach in Boston, Massachusetts.

   b. In or about February 1995, the exact date being unknown to the United States Attorney, GREIG, carrying a small bag with her, joined Bulger in Bulger's car and left Massachusetts with Bulger.

   c. On or about February 22, 1995, Jane Doe No. 1 withdrew $8,000 from the bank account (number ending in 1163) that she held jointly with GREIG.

   d. On February 24, 1995, Jane Doe No. 1 withdrew $7,500 from the bank account (number ending in 1163) that she held jointly with GREIG.

e.  Sometime thereafter, the exact date being unknown to the United States Attorney, Jane Doe No. 1, acting at the direction of John Doe. No. 1, provided John Doe No. 2 the cash withdrawn from the account (number ending in 1163).

f.  On various dates, from in or about February 1995 through in or about November 1996, the exact dates being unknown to the United States Attorney, Bulger communicated by telephone with John Doe No. 1, who, in turn, arranged telephone calls between Bulger and other persons, including other co-conspirators, in Massachusetts, at homes of third parties in an effort to conceal the location of Bulger and GREIG.

g.  On at least one occasion between February 1995 and November 1996, the exact date being unknown to the United States Attorney, John Doe No. 1 and Bulger arranged a phone call between GREIG and an individual in Massachusetts, at the home of a third party in an effort to conceal the location of Bulger and GREIG.

h.  On September 30, 1995, Bulger and GREIG checked into a Best Western Hotel in New York using the names "Mr. and Mrs. Thomas Baxter."

i.  In or about June 1996, GREIG purchased contact lenses at a Walmart in Louisiana using the false name "Helen Marshall."

j.  In or about the spring of 1996, the exact date being unknown to the United States Attorney, John Doe No. 1 informed Bulger that Bulger's false identity of "Thomas Baxter" had been made known to law enforcement.

k.  In or about July 1996, the exact date being unknown to the United States Attorney, John Doe No. 1, along with persons in Massachusetts known and

|     | |
| --- | --- |
|     | unknown to the United States Attorney, prepared and caused to be prepared false identification documents for Bulger. |
| l.  | In or about July 1996, John Doe No. 1 took photographs of an individual, John Doe No. 3, who was a relative of Bulger's, in order to prepare false photo identification documents for Bulger. John Doe No. 3 wore a fake moustache for the photographs in order to make him look like Bulger, who had altered his appearance as a fugitive by growing a mustache. |
| m.  | In or about the summer of 1996, Bulger spoke by phone with John Doe No. 1 and John Doe No. 3, who were at the home of a third party in Massachusetts, and discussed with John Doe No. 1 the delivery of false identification documents to Bulger. |
| n.  | In or about July 1996, Bulger and GREIG met with John Doe No. 1 and another person known to the United States Attorney, at a hotel in Chicago, Illinois, where John Doe No. 1 took photographs of Bulger for use on additional false identification documents. |
| o.  | In or about July 1996, Bulger and GREIG obtained a train ticket from Chicago, Illinois, to New York, New York, under the names "Mark Shapeton" and "Carol Shapeton." |
| p.  | On or about July 23, 1996, Bulger and GREIG traveled by train from Chicago, Illinois, to New York, New York, using the names "Mark Shapeton" and "Carol Shapeton." |

q.  On or about September 13, 1996, Bulger and GREIG traveled by train from New York, New York, to Chicago, Illinois, using the names "Mark Shapeton" and "Carol Shapeton."

r.  In or after 1995, the exact date being unknown to the United States Attorney, Bulger obtained a social security card with a social security number of an individual (C.W.G.) with an address in New York, New York.

s.  In or after 1995, the exact date being unknown to the United States Attorney, Bulger obtained identification documents displaying the social security number of an individual (C.W.G.) and photographs with Bulger's likeness.

t.  In or after 1995, the exact date being unknown to the United States Attorney, Bulger obtained a social security card with a social security number of another individual (D.G.G.) with an address in New York, New York.

u.  In or after 1995, the exact date being unknown to the United States Attorney, Bulger obtained identification documents displaying the social security number of D.G.G. and photographs with Bulger's likeness.

v.  In or before 1998, the exact date being unknown to the United States Attorney, Bulger and GREIG rented an apartment in Santa Monica, California, using the false names "Charles Gasko" and "Carol Gasko."

w.  On various dates from 1998 through June 22, 2011, the exact dates being unknown to the United States Attorney, GREIG falsely told individuals associated with the Santa Monica apartment, including the property managers,

|     | |
| --- | --- |
|     | that she was "Carol Gasko," that she was married to "Charles Gasko," and that they were from Chicago. |
| x.  | In or after 1998, the exact date being unknown to the United States Attorney, GREIG falsely informed a property manager at the apartment GREIG and Bulger rented in Santa Monica, California, that her husband "Charlie" had an illness. |
| y.  | On various dates from 1996 through June 22, 2011, including on or about May 1, 2011, the exact dates being unknown to the United States Attorney, GREIG delivered the rent for the apartment in Santa Monica, California, to the management office, paying in cash. |
| z.  | On various dates in 2010 and 2011, including on or about May 11, 2011, GREIG paid with money orders the monthly electricity utility bill for the apartment in Santa Monica, which was under the name "Carol Gasco." |
| aa. | In or about 2000, the exact date being unknown to the United States Attorney, Bulger obtained identification documents of an individual (J.W.L.) with an address in California. These documents included a social security card, California driver's licenses, and a birth certificate, among other things. |
| bb. | On various dates from 2007 through 2011, the exact dates being unknown to the United States Attorney, Bulger obtained medical services and prescription medication using a false name (J.W.L.). |
| cc. | On or about June 11, 2010, Bulger had a medical consultation at a medical clinic in Los Angeles, California, using a false name (J.W.L.). |

dd. In or about 1999, the exact date being unknown to the United States Attorney, GREIG obtained an identification document, which had a photograph appearing to be GREIG, but which displayed a false identity (J.L.) and an unassigned social security number.

ee. On various dates from at least 2002 through 2011, GREIG obtained medical services and prescription medication using a false name (J.L.).

ff. On or about September 7, 2005, GREIG submitted to a medical provider a patient identification form using a false name (J.L.) and other false identifying information and supplied that provider an identification document purporting to identify her as a resident of the state of New York. When supplying the identification document to the medical service provider for photocopying, GREIG obscured the unassigned social security number appearing on the identification document. GREIG also falsely claimed to be married to a man named Charles L. and listed that person as her emergency contact.

gg. On or about December 7, 2006, GREIG, using a false name (J.L.) provided a medical service provider false identifying information, including an unassigned social security number.

hh. On or about June 24, 2009, GREIG, using a false name (J.L.) provided a medical service provider false identifying information, including an unassigned social security number.

ii. On or about July 28, 2009, GREIG, using a false name (J.L.) provided a medical service provider false identifying information, including an unassigned social security number.

jj. On or about September 3, 2010, GREIG, using a false name (J.L.) provided a medical service provider false identifying information, including an unassigned social security number.

kk. On various dates from at least 2003 to 2008, Bulger obtained dental services using a false name (J.R.) and falsely identifying GREIG to the dentist as his wife, also using a false name (M.R.).

ll. On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, GREIG and Bulger created business cards for GREIG with a false name (J.L.).

mm. On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, GREIG and Bulger obtained the social security card of a female individual (P.M.), along with a Los Angeles County Court document and a birth certificate documenting a name change for this individual (P.M.).

nn. On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, GREIG and Bulger created business cards for GREIG with the name (P.M.).

oo. On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, GREIG and Bulger obtained social security information of a female individual (N.S.).

pp.  On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, GREIG and Bulger created business cards for GREIG with the name (N.S.).

qq.  On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, Bulger obtained identification documents of a male individual (S.J.T.), who had a driver's license from Nevada. The documents included a social security card and a Nevada driver's license, among other things.

rr.  On or about June 3, 2011, GREIG, using a false name (J.L.), obtained from a pharmacy in Santa Monica, California, prescription medication for Bulger that he had obtained using a false name (J.W.L.).  On that occasion, GREIG signed Bulger's false name (J.W.L.) when picking up the medication at the pharmacy.

ss.  In or after 1998, Bulger secreted approximately $800,000 in cash in holes cut into the walls of an apartment they were renting in Santa Monica, California.

tt.  In or after 1998, Bulger obtained and secreted multiple weapons in the apartment in Santa Monica, California that Bulger were renting, many of which were placed into holes cut into the walls of the apartment.

uu.  At least by 2007, and continuing at least until 2010, Bulger used a bank account of an individual (J.W.L.), whose identity Bulger had appropriated and who died in 2007, to pay for running shoe store club renewals and other purchases.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### (Conspiracy To Commit Identity Fraud, 18 U.S.C. § 1028(f))

23. The United States Attorney hereby re-alleges paragraphs 1-9 and 22 of this Superseding Information and incorporates them by reference as if fully set forth herein.

24. Beginning on a date unknown to the United States Attorney and continuing until at least on or about June 22, 2011, in Los Angeles County, within the Central District of California, and elsewhere, the defendant,

<div style="text-align:center">

CATHERINE E. GREIG,
a/k/a Carol Gasko,
a/k/a Carol Gasco,
a/k/a Helen Marshall,
a/k/a Carol Shapeton,
a/k/a Mrs. Thomas Baxter,
a/k/a J.L.,
a/k/a P.M.,
a/k/a N.S.,
a/k/a J.W.,
a/k/a C.L.,
a/k/a M.R.,

</div>

Bulger, and others known and unknown to the United States Attorney, conspired and agreed with each other to commit an offense against the United States, namely to knowingly possess with intent to use unlawfully, and transfer unlawfully, five or more identification documents (other than those issued lawfully for the use of the possessor) and authentication features and false identification documents, in violation of 18 U.S.C. § 1028(a)(3), under circumstances described in 18 U.S.C. §§ 1028(c)(1) and (c)(3)(A).

### Manner and Means of the Conspiracy

25. Defendant GREIG and Bulger, with the assistance of others known and unknown to the United States Attorney, would and did without lawful authority obtain multiple

identification documents and means of identification, including social security numbers, social security cards, driver's licenses, and birth certificates of other real persons.

26. Defendant GREIG and Bulger, with the assistance of others known and unknown to the United States Attorney, would and did use multiple false identities, including the identities of other real persons whose identification documents and means of identification GREIG and Bulger had obtained without lawful authority.

27. Defendant GREIG would and did use multiple false identities using the same last name of real persons whose identification documents and means of identification Bulger had obtained without lawful authority.

## Overt Acts

28. In furtherance of the conspiracy, and to accomplish its object, defendant GREIG, Bulger, and others known and unknown to the United States Attorney committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

    a. In or around 2000, the exact date being unknown to the United States Attorney, Bulger obtained identification documents of an individual (J.W.L.) with an address in California. These documents included a social security card, California driver's licenses, and a birth certificate, among other things.

    b. On various dates from 2007 through 2011, the exact dates being unknown to the United States Attorney, Bulger obtained medical services and prescription medication using a false name (J.W.L.).

c.     On some date prior to June 22, 2011, defendant GREIG and Bulger created a business card for Bulger with the name J.W.L.

d.     On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, defendant GREIG and Bulger obtained the social security card of a female individual (P.M.), along with a birth certificate and a Los Angeles County Court order documenting a name change for this individual (P.M.).

e.     On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, defendant GREIG and Bulger created a business card for defendant GREIG with the name P.M.

f.     On some date prior to June 22, 2011, the exact date being unknown to the United States Attorney, Bulger and defendant GREIG obtained identification documents of an individual (S.J.T.), who had a driver's license from Nevada. The documents included a social security card and a Nevada driver's license, among other things.

g.     On or about June 3, 2011, defendant GREIG, using a false name (J.L.), obtained from a pharmacy in Santa Monica, California, prescription medication for Bulger that he had obtained using a false name (J.W.L.). On that occasion, GREIG signed Bulger's false name (J.W.L.) when picking up the medication at the pharmacy.

h.     At least by 2007, and continuing at least until 2010, Bulger and GREIG used a bank account of an individual (J.W.L.), whose identity Bulger had appropriated and who died in 2007, to pay for running shoe store club renewals and other purchases.

All in violation of 18 U.S.C. § 1028(f).

## COUNT THREE
### (Identity Fraud, 18 U.S.C. § 1028(a)(7))

29. The United States Attorney hereby re-alleges paragraphs 1-9, 22 and 28 of this Superseding Information and incorporates them by reference as if fully set forth herein.

30. On or about the date set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendant,

> CATHERINE E. GREIG,
> a/k/a Carol Gasko,
> a/k/a Carol Gasco,
> a/k/a Helen Marshall,
> a/k/a Carol Shapeton,
> a/k/a Mrs. Thomas Baxter,
> a/k/a J.L.,
> a/k/a P.M.,
> a/k/a N.S.,
> a/k/a J.W.,
> a/k/a C.L.,
> a/k/a M.R.,

knowingly transferred, possessed, and used, under circumstances described in 18 U.S.C. §§ 1028(c)(1) and (c)(3)(A), without lawful authority, in and affecting interstate commerce, a means of identification of another person with the intent to commit, and to aid and abet the commission of, and in connection with, unlawful activity constituting a violation of federal law, to wit, harboring a fugitive, in violation of 18 U.S.C. § 1071, including the following:

June 22, 2011    Possession of Social Security Number of P.M.

All in violation of 18 U.S.C. § 1028(a)(7).

## FORFEITURE ALLEGATION
## (18 U.S.C. § 982(a)(2)(B); 18 U.S.C. § 1028(b)(5))

The United States Attorney further charges that:

31.  Upon conviction of one or more of the offenses charged in Counts Two and Three of this Superseding Information, the defendant,

> CATHERINE E. GREIG,
> a/k/a Carol Gasko,
> a/k/a Carol Gasco,
> a/k/a Helen Marshall,
> a/k/a Carol Shapeton,
> a/k/a Mrs. Thomas Baxter,
> a/k/a J.L.,
> a/k/a P.M.,
> a/k/a N.S.,
> a/k/a J.W.,
> a/k/a C.L.,
> a/k/a M.R.,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violation, and shall forfeit pursuant to 18 U.S.C. § 1028(b)(5) any personal property used or intended to be used to commit the offense, such property shall include, but not be limited to the following:

   a.   The Defendant's intellectual property rights to, and proceeds from, the conduct alleged in this Superseding Information.

32.   If any of the forfeitable property, as described in paragraph 31 above, as a result of any act or omission of the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third person;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

18

  e.  has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 31 above.

All pursuant to 18 U.S.C. §§ 982 and 1028, and Rule 32.2, Federal Rules of Criminal Procedure.

                CARMEN M. ORTIZ,
                United States Attorney,

By: _____
    Jack W. Pirozzolo
    First Assistant United States Attorney
    James D. Herbert
    Mary B. Murrane
    Assistant United States Attorneys

March 12, 2012