UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

UNITED STATES OF AMERICA,     )
     )
     )
   v.     )     CRIMINAL NO.  11-cr-10286-DPW
     )
     )
CATHERINE GREIG,     )
     Defendant.     )

———————————————————————)

## UNITED STATES' MEMORANDUM OF LAW REGARDING THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771

At the March 14, 2012 plea hearing in this matter, the Court ordered the United States to submit a memorandum of law addressing the scope of the Crime Victims' Rights Act, 18 U.S.C. 3771 (the "CVRA"). Specifically, the Court asked the United States to address whether the CVRA provides family members of individuals who are alleged to be murder victims of James Bulger ("Bulger") the right to be heard in this action. As set forth in more detail below, such family members should be considered "crime victims" for purposes of the CVRA, and, even if the Court were to determine that they are not "crime victims" as defined in that statute, it has the discretion to accept information from the family members in connection with the sentencing of the defendant, Catherine Greig ("Greig" or the "Defendant").

### Background Facts

In 1995, the Defendant, who had a close, personal relationship with Bulger, fled Boston with Bulger shortly after he was indicted for racketeering offenses. Over the next sixteen and a half years, the Defendant accompanied Bulger in various locations around the United States, including New York, Louisiana, and Illinois. Bulger and Greig eventually settled in Santa Monica, California, where the two lived under assumed names until they were arrested on

June 22, 2011.  At the time she left with Bulger in 1995, the Defendant was aware that Bulger

had been indicted.  The Defendant also learned while she was living with Bulger that a separate

grand jury indicted him in 2000 for racketeering offenses that alleged, as predicate acts, nineteen

murders.  She knew that law enforcement was actively searching for Bulger so that he could be

brought to Boston to face the charges on the 1995 and 2000 indictments.  She knew that at one

point Bulger had been placed on the FBI's Ten Most Wanted list.  Knowing all this, the

Defendant helped Bulger avoid capture.  As detailed in her sworn Statement of Facts, the

Defendant assumed multiple different identities while in Santa Monica, lied to people with

whom she came into contact, and generally provided Bulger with a cover story by claiming that

the two of them were a retired couple from Chicago.  By doing so, she took an active part in

denying the families of the alleged murder victims an opportunity to have Bulger brought to court

to face justice.   The emotional harm to those families was real and significant.  For sixteen years,

those families faced the prospect that Bulger would never be found and that the alleged murderer

of their loved ones would escape justice.

## Analysis

The CVRA, 18 U.S.C. § 3771, provides crime victims with a number of rights in

connection with criminal proceedings, including the "right to be reasonably heard at any public

proceeding." 18 U.S.C. § 3771(a)(4).  The CVRA defines "crime victim," in pertinent part, as "a

person directly and proximately harmed as a result of the commission of a Federal offense."  18

U.S.C. § 3771(e).[1]  The term "harm" includes not only pecuniary and bodily harm but also

---

[1]  The Federal Rules of Criminal Procedure incorporate the definition of "crime victim" found in § 3771(e).  See Fed. R. Crim. P. 1(b)(12).

emotional and psychological harm.  See, for example, United States v. C.R., 792 F. Supp. 2d

343, 388 (E.D.N.Y. 2011) (parents "emotionally hurt" by exploitation of a child are "victims");

see also Fed. R. Crim. P. 32(d)(2)(B) (incorporating CVRA definition of crime victim and

requiring the presentence report to include "information that assesses any financial, social,

*psychological*, and medical impact on a victim.") (emphasis supplied).[2]  In addition, a person

need not be the target of the offense to be considered a "crime victim" as long as that person can

show direct and proximate harm.  See C.R., 792 F. Supp. 2d at 388; see also In re Fisher, 640

F.3d 645, 648 (5th Cir. 2011) ("'Under the plain language of the statute, a party may qualify as a

victim, even though it may not have been the target of the crime, as long as it suffers harm as a

result of the crime's commission.'" (quoting In re Stewart, 552 F.3d 1285, 1289 (11th Cir. 2008)

(per curiam) ("The CVRA [ ] does not limit the class of crime victims to those whose identity

constitutes an element of the offense or who happen to be identified in the charging document.

The statute, rather, instructs the district court to look at the offense itself only to determine the

harmful effects the offense has on parties.")))

    Courts construing the term "directly and proximately harmed" have often seen it as

imposing a traditional tort causation requirement.  See, for example, United States v. Monsel,

641 F.3d 528, 534-37 (D.C. Cir. 2011) (discussing proximate harm requirement for restitution

---

[2]  Where the claim of emotional or psychological harm is not accompanied by physical or
pecuniary harm, the question of whether a putative victim has rights under the CVRA requires a
fact-specific analysis.  See Attorney General Guidelines for Victim and Witness Assistance at 9
(2011) ("The harm can be physical, emotional, or pecuniary.  In the absence of physical or
pecuniary harm, emotional harm may be presumed in violent cases where the individual was
actually present during a crime of violence, or, if not present, received information about a
violent act attempted against him or her.  *In all other cases, emotional harm should not be
presumed in the absence of physical or pecuniary harm, but rather the existence of cognizable
emotional harm should be determined on a factual, case-by-case basis*.") (emphasis supplied).

under the CVRA in child exploitation context); In re: Antrobus, 519 F.3d 1123, 1125 (10th Cir.

2008) (looking to state common law principles to assess whether the parents of a murder victim

could be heard in the prosecution against the person who illegally sold the firearm to the

murderer and finding that there was not "proximate causation"); United States v. Sharp, 463 F.

Supp. 2d 556, 563-67 (E.D.Va. 2006) (discussing direct and proximate cause standard of the

CVRA and applying the traditional civil concept of "proximate causation").

       To be considered a "crime victim" under the CVRA, a person must show that the offense

was both a direct (i.e., "but for") cause and a proximate (i.e., "foreseeable") cause of the harm.

Id. at 565 ("[f]oreseeability is at the heart of proximate harm; the closer the relationship between

the actions of the defendant and the harm sustained, the more likely that proximate harm exists.")

(citing Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 713

(O'Connor, J. concurring) ("Proximate causation is not a concept susceptible of precise

definition. . . . We have recently said that proximate causation 'normally eliminates the bizarre' .

. . and have noted its 'functionally equivalent' alternative characterizations in terms of

foreseeability . . . and duty . . . . Proximate causation depends to a great extent on considerations

of the fairness of imposing liability for remote consequences." (internal citations omitted))).  As

is the case in virtually all other types of causation inquiries, the question of whether a federal

offense caused direct and proximate harm to a person for purposes of the CVRA requires a fact-

specific analysis.[3]

---

    [3] See also 18 U.S.C.S. § 3771, Commentary ("The definition in theory is fairly
straightforward, but it may become more complex, especially as concerns the meaning of
proximate harm.  Foreseeability is at the heart of proximate harm; the closer the relationship
between the actions of the defendant and the harm sustained, the more likely that proximate harm
exists.  Determining who is a victim in a given case will always be a fact-specific analysis."

Where, as here, the harm from the Defendant's crimes is an emotional one, state tort law provides a helpful analytic framework for applying the CVRA's definition of "crime victim." The intentional or reckless infliction of emotional distress is a tort at common law.  The Restatement (Third) of Torts (Tentative Draft No. 5) sets forth the basic common law principle:

> An actor who, by extreme and outrageous conduct intentionally or recklessly causes severe emotional disturbance to another is subject to liability for that emotional disturbance and, if the emotional disturbance causes bodily harm, also for the bodily harm.

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 45 (Tentative Draft No. 5, 2007).[4]  Although Massachusetts law is by no means controlling on this point (since the issue here is construction of the federal statute), Massachusetts has long recognized liability for the intentional or reckless infliction of emotional distress.  To sustain a claim of intentional or reckless infliction of emotional distress under Massachusetts law, a plaintiff must show (1) that the defendant intended to cause, or should have known that her conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.  See Roman v. Trustees of Tufts College, 461 Mass. 707, 717-18, 2012 WL 917585 (March 21, 2012) (citing Sena v. Commonwealth, 417 Mass. 250, 263–264, 629 N.E.2d 986 (1994) and Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976)); see also Fredette v. Allied Van Lines, Inc., 66 F.3d 369 (1st Cir. 1995) (affirming jury verdict finding intentional

---

(internal citation omitted)).

[4]  This formulation will update and supersede Section 46 of the Restatement (Second) of Torts, which also set out liability for outrageous conduct causing emotional distress.  See Restatement (Third) of Torts § 45, at note a.

inflition of emotional distress); <u>Boyle v. Wenk</u>, 378 Mass. 592, 392 N.E.2d 1053 (1979)

(private investigator liable for intentional infliction of emotional distress); <u>Simon v. Solomon</u>,

385 Mass. 91, 431 N.E.2d 556 (1982) (landlord liable for intentional infliction of emotional

distress from flooding in basement).[5]  Accordingly, to the extent the Defendant's conduct falls

within the ambit of the tort of intentional or reckless infliction of emotional distress, the family

members of Bulger's alleged murder victims should be considered "crime victims" as that term is

defined in the CVRA.

   Greig's conduct meets each of the elements necessary for the family members to show

that Greig could be liable in tort to them for intentional or reckless infliction of emotional

distress, under either the Restatement formulation or the Massachusetts standard.  Harboring and

concealing – for over sixteen years  – a man wanted for serious federal crimes, including nineteen

murders, qualifies as extreme and outrageous conduct.  Although the United States has not found

any case directly on point, Greig's conduct appears to be at least as extreme and outrageous as

other types of conduct courts have found to trigger liability for intentional or reckless infliction

of emotional distress, such as a moving company that botched the relocation of a mobile home,

see <u>Fredette</u>, 66 F.3d at 374-75, or a landlord who failed to repair a basement apartment's

flooding problem, see <u>Simon</u>, 385 Mass. at 95-96.  There also is no serious dispute that the

family members of the murder victims suffered enormous emotional trauma facing the prospect

that the man wanted for killing their loved ones might never be found and might never have to

---

   [5] Arguably, the Massachusetts formulation of the tort is broader than the Restatement's since the Massachusetts version imposes liability under circumstances in which the defendant "should have known" the actions would have resulted in emotional distress, whereas the Restatement imposes an intentional or reckless scienter requirement.

answer the charges against him.  Cf., Cahalin v. Rebert, 10 Pa. D&C. 3d 142, 149-40, 1979 WL

499 (Pa.Com.Pl. April 10, 1979) (holding that a grandmother could be held liable for intentional

infliction of emotional distress by helping a mother conceal children from the father; "[a] jury

may well find that the removal of one's children and the denial of any contact with them or

knowledge of their condition for over a year would be unendurable to the proverbial reasonable

man").  Greig – who personally helped Bulger avoid capture – caused that distress, and, in doing

so, acted in reckless disregard of the anguish she was causing those families.  At a minimum, she

"should have known" that her conduct would cause that distress to those families.  Accordingly,

Greig's conduct falls within the scope of the tort of intentional or reckless infliction of emotional

distress.

   Connecting this analysis back to the CVRA's definition of "crime victim," Greig's

conduct, insofar as it is sufficient to trigger tort liability to the family members, appropriately

should be viewed as both a "direct" and "proximate" cause of the harm to them as required under

the CVRA.   The United States recognizes the policy concern embedded in the CVRA that

without some reasonable limitation on the definition of "crime victim," the statute would be

unwieldy.  Without a workable notion of proximate causation, the CVRA could trigger

obligations on the Court and the United States to potentially limitless numbers of individuals

who may have suffered only the slightest and most theoretical of harms.  But in this case, the

family members of Bulger's alleged murder victims who wish to speak can show a "proximate

harm" that fits within a traditional civil proximate causation analysis.  The harm they have

suffered is neither remote nor theoretical.  Accordingly, the Court should consider them "crime

victims" under the CVRA, and they should be permitted to submit victim impact statements and to allocute at her sentencing on June 12, 2012.[6]

Should the Court disagree, and hold that the families are not "crime victims" for purposes of the CVRA, it nevertheless should allow the family members to allocute at the sentencing. Even if an individual may not meet the statutory definition of "crime victim," nothing in the CVRA prohibits a court from providing that individual with participatory opportunities.  See United States v. Turner, 367 F. Supp. 2d 319, 327 (E.D.N.Y. 2005).  The Turner court suggested that to safeguard the rights set forth in § 3771 the court should, absent an affirmative reason to think otherwise, presume that a person whom the government asserts was harmed was in fact harmed, and treat that person as a victim for purposes of the CVRA.  Id. at 327 ("[A]bsent an affirmative reason to think otherwise, I will presume that any person whom the government asserts was harmed by conduct attributed to a defendant, as well as any person who self-identifies as such, enjoys all of the procedural and substantive rights set forth in § 3771.").[7]  Moreover, for purposes of sentencing, the Court has extremely wide latitude to consider information relevant to the background, character and conduct of a defendant.  See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the

---

[6] The United States is not arguing here that the family members represent the outer reaches of proximate causation under the CVRA, or that victims must be able to show a cognizable cause of action in tort to come within the scope of the statute.  The United States is arguing here only that, in this case, because the family members can show a cause of action in tort, a sufficient basis exists to consider them "crime victims" under the CVRA.

[7] But see United States v. W.R. Grace, 597 F. Supp. 2d 1157, 1161 (D. Mont. 2009) (disagreeing with certain components of Turner court's reasoning), vacated, 2009 WL 5697923 (D. Mont. February 27 2009).

purpose of imposing an appropriate sentence.").  In short, regardless of whether they are formally

considered "crime victims" under the CVRA, the family members should be able to provide

statements to the Court as part of the sentencing.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: **/s/ Jack W. Pirozzolo**
JACK W. PIROZZOLO
First Assistant U.S. Attorney
JAMES D. HERBERT
MARY B. MURRANE
Assistant U.S. Attorneys
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3189

## CERTIFICATE OF SERVICE

I, Jack W. Pirozzolo, hereby certify that on April 13, 2012, I served a copy of the
foregoing motion via electronic filing on counsel for the defendant.

**/s/ Jack W. Pirozzolo**
Jack W. Pirozzolo