UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Criminal No.
11-10286-DPW

UNITED STATES OF AMERICA

VS.

CATHERINE GREIG

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant Catherine Grieg in the above matter and respectfully submits the following in support of sentencing.

First, the defendant notes that the Probation Department has done a complete and thorough job of accurately presenting to this Court her personal history replete with the factual presentation of her life, work history, family and emotional events that have impacted her life. The defendant further notes that the Probation Department's calculations of the sentencing guidelines are detailed, thorough and presented with a clarity and, as such, has no objection to the Pre-Sentence Report as submitted to the Court. The defendant agrees with the recommended guideline sentence range of 27 to 33 months. The defendant is requesting this Court impose a sentence at the low end of the guidelines being 27 months.

Ms. Greig vehemently disputes the government's speculative narrative regarding the course of conduct they allege the defendant engaged in. The government suggests that she was aware of weapons hidden in the wall as well as money and weapons hidden in the room occupied in the apartment by Mr. Bulger. There is no evidentiary or factual basis to find that Ms. Grieg was aware of the weapons or money. One of the weapons, a revolver, was found "in plain view" and therefore by implication having resided with Mr. Bulger she must have seen it or known it

KEVIN J. REDDINGTON • ATTORNEY AT LAW • 1342 BELMONT STREET • BROCKTON, MASSACHUSETTS 02301 • (508) 583-4280/(508) 580-6186

was there. There is evidence that Bulger and Grieg occupied separate bedrooms. There is evidence that Grieg was prohibited from entering into the Bulger bedroom. There is no evidence that Grieg had knowledge of the existence of such items yet the government seeks to obtain a level increase due to the "weapons guidelines".

In fact, there is no evidence that Greig ever handled a weapon let alone knew of their existence and had an intent to utilize them. There is no handler DNA. There are no fingerprints. Grieg's shock and apparent surprise at the existence of the same when the FBI arrested them speaks for itself. In short, there is absolutely no basis for this Court to determine that Catherine Grieg possessed actually or constructively these items.

Just as ridiculous is the governments suggestion that Greig "must have known" about the money because she lived in the apartment for over a decade. She also was the person who paid the rent, purchased groceries, medications and paid the utilities. All of these necessaries were paid for in cash. It is readily apparent that she was given cash by Bulger. A review of the evidence shows that she had a cash drawer in the kitchen much like a cash register. All sorts of denominations were in the drawer from one hundred dollar bills to ones. This drawer was the source of her weekly expense money to maintain the modest life style they had. There is no evidence whatsoever that she knew of the location of cash either in the apartment or elsewhere. Mr. Bulger's personality is well known and has been written about for decades. It is not likely that he would just arbitrarily tell Grieg where a large amount of cash was located and such this argument is speculative.

The evidence shows that Catherine Grieg was in love with James Bulger. Why people fall in love has been debated since before Shakespeare's sonnets. Many times people fall in love and their family or loved ones do not approve or condone the relationship. The truth of the matter is

that she was and remained in love with Mr. Bulger. At the time she left with him he was literally a hero, a champion of the oppressed, liked to be a "Robin Hood like " person. The initial indictment against him contained none of the horrific allegations of murder as the subsequent indictment returned years later. She at no time believed him to be a murderer let alone an individual capable of what the second indictment alleged. Throughout their travels the evidence shows that she was a passive participant in encounters with friends they made along the way as well as a person who on occasion was somewhat intimidated by Mr. Bulger. (reference the Louisiana incidents). As they continued their travels false names were used. Mr. Bulger was pro-active in obtaining identifications and it does not appear that Ms. Grieg was the force behind such machinations. (reference when Mr. Weeks met them in Chicago and used a blue back-drop for the taking of photographs and Grieg declined the opportunity to have her identification made). Their ultimate settling down occurred in California where they resided by all accounts in a modest, law abiding fashion with the exception of the obtaining of identification from people that were paid for the same.

The government refers to these individuals as "vulnerable victims" due to either emotional issues or addiction issues. The evidence shows that these individuals indeed were not preyed upon by Mr. Bulger but paid for the identities. In fact, although illegal and certainly not to be condoned on many occasions Mr. Bulger would befriend the people and pay their bills, rent, food and provide friendship. (reference the emotional reaction Mr. Bulger had when talking to the FBI agent about the death of one of his "victims". By most accounts Grieg had little or nothing to do with the interaction of Bulger and these individuals. The government contends that her discussion on the beach with one of the "victims" is almost the "smoking gun" of her involvement with the scheme. Grieg admits and has pled to the offense of possession of these

identifications but clearly was not the central or moving force behind a plan to use or in any fashion derive benefit from these identification forms.

The possession by Grieg of the business cards, false identities and many innocuous forms of identification such as an AARP card, photo i.d. card obtained in New York where anyone can have a "non state issued identification" card made on a street corner, frequent shopper benefits card and various drug store cards belies the intent to ever use any one of these forms of identification for anything other than proof of identity. Clearly her possession of these identification cards was in furtherance of the harboring charge and were NEVER used for financial gain. The evidence shows that at NO TIME did Grieg ever obtain services, seek or obtain benefits from any state or local agency, never tried to obtain a state issued form of identity such as social security number, drivers license etc. Grieg NEVER used these identities with the exception of information to a physician or dentist when providing background for the purpose of opening up a file at an office in the course of medical treatment. All of the expenses incurred by either Grieg or Bulger were paid by them in cash.

In sum, the possession of the forms of identity is as innocuous a form of conduct as could be. The items were clearly possessed in furtherance of the harboring. To suggest as the government does that these are separate felonies indicating Grieg's malicious state of mind is just not borne out by the evidence. The investigation and evidence shows that Grieg lived a very sedentary and quite life with Bulger for the sixteen years they were together. She was by all accounts a sweet, kind, gentle person who helped people, was friendly and very active in helping disabled or homeless animals. Indeed, the government concedes that their investigation shows that Grieg lived a quiet unobtrusive life, liked and respected by her neighbors with a love for

animals. Mr. Bulger by all accounts was a person who certainly kept to himself while living with Grieg. In short, they were good neighbors and minded their own business.

The government is clearly seeking a draconian sentence that is designed to crush the defendant with a severe prison sentence far above that recommended by the guidelines. The fact of the matter is that Greig pled guilty to three Class D felonies. As indicated, the possession of the identifications was as innocuous as could be and in furtherance of the harboring. The government seeks to paint Grieg as some kind of sinister mastermind, orchestrating the escape and evasion of Bulger from law enforcement showing total and complete disdain for her obligations as a citizen. In fact, the government is apparently seeking to rectify the bungling and inept investigation of law enforcement and perhaps redeem them from the sordid history and bad publicity they have received. Grieg was no such person. She did not mastermind or in a sinister fashion prevent law enforcement from finding Bulger. She acted in all respects as his wife and house mate. She cleaned, cooked and shopped. As stated above she was in love with him and believed him a man totally incapable of the things that were being said about him. They were literally "hiding in plain sight". The government's argument that the cap on the BOL for harboring does not apply in this case and its effort to have her charged with harboring a fugitive with the "death guidelines" governing the sentence as well as its objection to the grouping of the offenses and incredibly suggesting that she knew of perjury constituting obstruction of justice with the attendant increase in BOL is as transparent as it is facile.

It is apparent that the government entered into a plea bargain with the defendant with its eyes wide open. She entered pleas to three Class D felonies with the low maximum of five years, incredible for federal offenses and the likely disposition of 24-33 months. The United States Attorney was then subjected to a firestorm of media hype based upon the criticism leveled

by the "victims," spear-headed by the ubiquitous Steven Davis. It was then and only then that a full court press was organized to bury Catherine Grieg with a severe prison sentence coupled by a demand for exorbitant fines and seizure of everything she owns. The apparent self-anointed spokesman for "the victims" is Mr. Davis. The ever garrulous Davis and his incessant press conferences and criticism of the United States Attorney's Office as well as the "evil" Grieg is clearly the "tail wagging the dog". He criticizes and denigrates the U.S. Attorney when he does not agree with their direction in the resolution of the case. He is in constant contact with the media reveling in his press conferences in front of the courthouse. He has been interviewed and made numerous comments about his plans to go to California for consultation regarding his "movie" as well as his book that he is writing. On Saturday, June 9, 2012 he noted that he wanted Ms. Greig to serve at least 16 years but "......ten would do. Anything lighter than that would be corrupt." There would have to be corruption in the Court.

It should be noted that Ms. Grieg could have made an incredible amount of money by selling her intellectual property rights to a "story" with the attendant spin off projects. AT NO TIME did Grieg EVER intend to profit off her relationship with Mr. Bulger. When the issue arose of her waiver and forfeiture of such rights she immediately agreed without guile or hesitation noting she never ever would profit off her private life with Mr. Bulger. Nevertheless this is a significant forfeiture and should be considered by the Court when weighing a fair sentence for Ms. Grieg.

The Probation Department prepared a Pre-Sentence report that thoroughly analyzes the sentencing guidelines and their application to the facts of this case and a fair sentence consistent with the aims of Title 18 U.S.C s. 3553(a). The defendant is a Criminal History I with no previous record. Guideline 2X1.1 applies to violations of 18 U.S.C s.371 (Count 1). The

guideline notes in s.2X3.1(a)(3)(B) that the base offense shall be capped at 20 as the criminal conduct is harboring. The other offenses were clearly in furtherance of the primary course of conduct, i.e. harboring Mr. Bulger. The Probation Department Pre-Sentence report further notes that Group 2 including Counts 2 and 3 are to be grouped together. The base offense guideline §B1.1(a)(2) sets the BOL at 6 as the conviction is a Class D felony and does not rise to the twenty year maximum term of imprisonment. The defendant agrees that the BOL should be increased 6 levels pursuant to §2B1.1(b)(11)(c)(i) arising out of the use of the identifications by Mr. Bulger to obtain other means of identification and the use by Bulger of social security numbers (Gaska) to obtain identification. The result is an offense level of 12.

Pursuant to §3D1.4 the grouping principles apply and the combined total offense level as calculated by the Probation Department is 18. This includes Groups 1 and group 2. With a combined total offense level of 18, Criminal History of 1, the applicable guideline range is 27-33 months as set forth by the Probation Department in the Pre-Sentence report.

Notwithstanding the government's numerous objections to the sentencing guidelines to be applied in the case as calculated by the Probation Department in the Pre-Sentence report the interests of justice require a fair application of the guidelines consistent with the goals of a sentence. The repeated mention of the "high profile nature" of this case and attendant publicity should not and will not cause a draconian imposition of sentence as that would not be consistent with the interests of justice. What Catherine Grieg did was a crime and she admitted her culpability before this Court at the time of the change of plea. The sentence this Court imposes is the end of the process for Ms. Greig as there is no appeal pursuant to the plea agreement. She is a 60 year old woman who stands before this Court for sentencing literally alone against the world and with the forces of all the power of the United States government aligned against her.

Other than her twin sister she literally has no one. She has been a model prisoner liked by many, staff as well as inmates during her year at the Wyatt Detention Facility. She has at all times maintained herself with class, dignity and strength. She is however cowed and humbled and quite frankly very afraid of what her sentence will be. At the age of 60 every year has a special value and time incarcerated is severe. Recognizing however, the nature of this case the defendant does not seek a downward departure but rather asks for a sentence at the low end of the guidelines as calculated by the Probation Department. Vengeance and pride may drive the government's sentence recommendation of ten years. Experience and judicial wisdom will see that three Class D felonies do not warrant such a sentence and it is not justice to use the law as a cudgel to exact the proverbial "pound of flesh" from a kind, gentle 60 year old woman who is at the mercy of this Court for a fair sentence commensurate with her conduct which arose out of the love she had for Mr. James Bulger.

/s/Kevin J. Reddington, Esq.