UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Criminal No.
11-10286-DPW

UNITED STATES OF AMERICA

VS.

CATHERINE GREIG

**DEFENDANT'S OPPOSITION TO ALLOWING STEVEN DAVIS AND OTHERS ALLOCUTE AS "VICTIMS" AT SENTENCING**

The defendant respectfully opposes the government's request to allow individuals the opportunity to be heard in allocution at the time of the defendant's sentencing hearing as purported "victims". As the defendant argued to the Magistrate at the detention hearing, the individuals who seek to be heard are not "victims" of the crimes Catherine Greig is to be sentenced for. The defendant filed an opposition which was argued to the Magistrate but no decision was made after taking the matter under advisement. Instead, the Magistrate allowed the individuals to be heard as a matter of discretion subject to her ruling to be made later and depending on the decision the statements would stand or be stricken.

The defendant submits that the Crime Victims Rights Act, Title 18 U.S.C s.3771 (hereinafter referred to as the CVRA) does not permit the survivors of the individuals alleged to have been killed by Mr. Bulger to be heard in sentencing Ms. Greig for the act of harboring him (Count I). The defendant does not take a position in objection to any purported victims of the identity counts ( 2 and 3). This Court is well aware of the factual predicate upon which these complaints are predicated having taken the Rule 11 plea as well as reading the numerous submissions of the government. The CVRA provides an opportunity of "victims" of a defendant's

criminal conduct the opportunity to be "reasonably heard at any public proceeding." 18 U.S.C §377 1(a) (4). A "victim" is defined in the CVRA as any person who is "directly and proximately harmed as a result of the commission of a federal offense. Title 18 U.S.C §377 (1)(e). The harm to be considered as a factor in determining if a person is a "victim" includes physical and pecuniary injury or loss as well as emotional harm that is derivative and a direct proximate result of the underlying criminal conduct.

It is instructive to note that the civil standard of proximate cause to a particular harm is applicable to this context. United States v. Mansel, 641, F3 528 (DC cir. 2011). Where there is no direct physical or pecuniary harm which may be presumed in a case of violence directed at the victim, there is no such presumption where there is an absence of physical or pecuniary harm targeting or affecting a particular victim. This principle is carried over into the Attorney General's Guidelines for Victim and Witness Assistance (2011). Proximate causation depends on the fact driven consideration of the fundamental fairness of imposing liability for remote consequences. See also the commentary to 18 U.S.C §3771 noting that determination of a "victim's status" is to be driven by the facts of the individual case. See also the case cited by the government, Babitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S 687 (O'Connor J. dissenting). It is interesting to note that the Babbit case concerned an argument as to whether under the Endangered Species Act of the United States the term "take" could also include alteration of habitat ultimately resulting in the death of a particular species. The Court held that habitat modification is to be considered as part of the harm occasioned to the protected species. The Court relied heavily on the legislative history and debate determining that Congress intended to give the widest latitude to the term "take" and the interpretation given by the Secretary of the Interior and Department of the Interior.

The government cites many cases to the proposition that intentional infliction of emotional distress as defined and examined by state cases allows an extension of the conduct of the defendant in the instant case in the act of living with Mr. Bulger as his companion and housemate, paying bills, cooking food, cleaning and doing laundry and socializing with neighbors, taking him to the dentist and doctor constitute conduct that would justify a finding that the surviving family members of individuals he is alleged to have killed are victims since he evaded capture for so many years. It is interesting to note however, that an examination of the cases cited show just the opposite of the government's contention. In each of these cases there is a direct interaction between the actor and the victim. None of the factual scenarios examined in the cases cited show such an attenuation of connect between the actor and the alleged victim as is present here. Clearly the government contends that by living with Mr. Bulger for 16 years the defendant somehow was instrumental in his avoidance of apprehension. The evidence shows that Mr. Bulger was far from a recluse, walking the streets, dining on occasion, going to dentist and doctor appointments as well as her conduct as his housemate set forth above. The conduct of the defendant is so far removed from the claim that she in some fashion harmed or injured the survivors of his alleged victims many years prior that it should not be determined to be a course of conduct creating victim status under the CVRA and would be in total violation of the Attorney General guidelines cited above. In addition, it is interesting to note that the civil claims of alleged victims seeking damages for intentional infliction of emotional distress was dismissed in the superior court (Exhibit A).

An examination of the cases cited by the government in support of its position are easily distinguished by an examination of their facts. The attenuated conduct of Greig is clearly inapposite to that of a grandmother hiding a child thereby preventing the father of the child from

seeing the child for over a year, (Cahalin v. Rebert, 10 P.A D & C 3RDDS149 (1979), a landlord who intentionally allows a basement to flood damaging his tenant, Simon v. Solomon, 385 Mass 91 (1982), and egregious conduct perpetrated by a private investigator in Boyle v. Wenk, 378 Mass 592 (1979).

The defendant submits that these individuals are not "victims" in the sense of the CVRA to the crime of harboring Mr. Bulger. It is important as well to note that when Greig left with Mr. Bulger he was charged with RICO crimes not including murder. It was not for many years before the superseding indictment was brought alleging the murders and it was not until the infamous hearings before Hon. Mark Wolf that Bulger's status as an alleged informant for the FBI was made known spawning a decade of torrid allegations against the BI and many of its agents resulting ultimately in the conviction of John Connolly and the disgrace of many others. It is understandable that some type of payback is desired but it is not in the interest of justice to try to redeem such misconduct by crushing Ms. Grieg with an excessive sentence.

When the Court considers the status of these individuals as "victim" an examination of other cases is appropriate.

In the case of In Re Rendon Galvis, C.A.2 (NY 2009), 564 F3d 170, the court held that a defendant's participation in a conspiracy to import cocaine to which he had pled guilty was not a case where a mother was a victim and would be allowed to render statements where he son was murdered by paramilitary affiliated with a Columbian terrorist organization and determined that she did not have status as a "crime victim" under the C.V.R.A.

The case of In Re Antrobus, C.A. 10 (Utah 2008), 519 F3d 1123 held that the district court was correct in its finding that a shooting victim was not a "victim" of a gun dealer who illegally transferred a hand gun to a juvenile. Although guilty of the weapons violation it was

determined that the shooting occurred after the juvenile became an adult and was not directly related to the offense for which the defendant pled guilty.

CONCLUSION

The defendant requests that the Court not permit allocution by the alleged "victims" as requested by the government.

/s/ Kevin J. Reddington, Esq.

EXHIBIT A

In Norfolk Superior Court case docket No. 01--282 John Davis and Robert Davis Administrators of the Estate of Olga Davis and as Administrators of the Estate of Debra Davis et. al plaintiffs v. Steven Flemmi and James Bulger, finding on assessment of damages at p. 2 order of Judge Patrick Brady dated 9-9-09 , Count 4, negligent infliction of emotional distress dismissed.